May it please the Court, my name is Stephanie Adractas and I represent the petitioner Enrique Godoy. His mother and other family members are also present this morning. Mr. Godoy's right to a fair trial was violated due to jury misconduct. Under the 14th Amendment, trial jurors may not be granted a verdict. Help us with the facts. This juror misconduct that you're focusing on involved an alternate. Is that correct? Am I wrong on that? Your Honor, partially. The facts were that it was two alternate jurors who brought the misconduct to the attention of defense counsel in the court. However, the misconduct that was described was by a sitting juror, juror number 10. Both juror EM, an alternate, and juror NL, also an alternate. They both described in their declarations that juror 10, a sitting juror, was using her BlackBerry phone to text message a person that she described as a judge who lived up north. Is there any evidence that juror 10 was receiving anything from this judge up in the north that related to the merits of the case? We don't know that, Your Honor. The two incidents that juror EM described in her declaration were essentially legal advice about what was going to happen next in the trial. We know that juror 10 was very anxious to wrap up the trial. She wanted it to go quickly so that she could... But there's no evidence that the judge was telling her how to rule or giving her advice about the law or anything else. It all had to go with sort of procedural, that is, what you can anticipate next. That is, a substitute judge is going to be brought in and so forth. Right. Those are the two incidents, Your Honor, that were described. However, we don't know if the other communications were more substantive or what other subjects they dealt with. And the concern here is that juror EM and juror NL both noticed that these communications were happening frequently. And so at that point, the trial court did have a duty under Remmer to conduct an adequate inquiry into the actual context and also the content of all of those communications. And this court in Caliendo described the constitutional rules around jury misconduct and emphasized that the actual content of the communications is not determinative. And that's where the California Court of Appeal made its most essential error here in characterizing the communications when we don't know what all of them were as being only prejudicial. However — The counsel, Caliendo, is a Ninth Circuit case, but under AEDPA, we have to look to Supreme Court cases. What's your best Supreme Court case? Your Honor, I believe Remmer, both Remmer and Maddox talk about the necessity of holding a hearing to determine the content of the jury misconduct and that any extraneous influences upon a verdict. And Turner, as well, Your Honor, I think also speaks to this. But you have to be able to persuade us that the decision of the California court was contrary to Remmer or Maddox. Is that your position? And Turner, Your Honor, in two ways. And, you know, under the AEDPA, we can look to the unreasonableness of the State court's application of the constitutional rules, which I did describe in my brief. They did not actually presume these communications to be prejudicial. What they did was presume them not to be prejudicial by applying a label, the procedural nature of the ones that were described, to the communications. That's contrary to the Supreme Court precedent, which requires a presumption of prejudice and also requires a strong showing by the government. In which case? The presumption of prejudice comes out of which case? The presumption of prejudice comes out of Turner and out of Remmer and Maddox. Yeah. But in Remmer, it was clear that it went to the substance. This was an — that there was an effort to influence the jury in the way that the jury voted. That was obvious that that was the problem. It's correct, Your Honor. And that would seem — that would seem clear, then, in a case like that, that we have to presume prejudice and then allow the government an opportunity to try to rebut that. This Court's opinion in Caliendo, recognizing that it's not Supreme Court precedent, however, it does guide us in interpreting the United States Supreme Court precedents. And I believe that opinion very clearly addresses this Court's questions about the nature of the communications and how that factors in to this Court's analysis. It's one factor. Acknowledging, Your Honor, it is one factor when we look at the content. You skipped over at least one question I'd like to ask about the California Court of Appeals standard. They said that the NL's declaration failed to demonstrate a strong possibility that prejudicial misconduct had occurred. Is that the correct Maddox-Remmer standard? It is not, Your Honor. Why don't you start with that? Well, Your Honor, the strong possibility language, the strong terminology, actually should have been used in reference to the government's burden. Well, that's correct. So they clearly erred in the standard that they were applying to begin with. You start out with the application, but isn't their standard, the strong possibility, is flatly erroneous under Maddox and Remmer? Yes, Your Honor, and I address that in more detail in my reply brief that the California standard is different. Well, I understand, but you're an oral argument, and as Judge Scanlon said, you need to demonstrate how they were clearly wrong about established, clearly established Supreme Court precedent. Yes, Your Honor. And doesn't that standard that they adopted constitute just that? It does, Your Honor, because it's an incorrect application of U.S. Supreme Court rules. We also have an unreasonable determination of fact in that when the California court of appeals said that Mr. Godoy had failed to establish a prima facie case in his companion habeas petition, that was objectively unreasonable in the same way. But this goes back to the question that I asked you earlier, which was whether there was any evidence of tampering with the jury. It's clear that we've got juror misconduct, and the California court of appeals acknowledged that. Nobody is disputing that. The trial court, this is — whoever was the judge up in northern California ought to be sanctioned by California for this. This was — this is outrageous. But there was no evidence that anybody was trying to influence a jury. That was the evidence that comes before the court. And why can't the court look at that and say, I don't find any evidence, unlike Remmer, of trying to influence the jury? There's no threats to the jury, there's no promises of reward, there's no suggestions that life will turn out better for people, for jurors, if they find one way or the other. Well, we don't know that there wasn't a communication that drifted into that area, because the court failed to take testimony about the precise nature of the communications. In the case involving the FBI agent, I believe it's Remmer, where there was a communication that suggested that the juror could benefit from a defense verdict. The — one of the main concerns of the Supreme Court was that the involvement of an FBI agent in the proceedings and that the jurors, knowing that there was this investigation going on, could have influenced the way they deliberated. And that's precisely one of the primary concerns here, that having an extra record judge, someone that the sitting trial judge doesn't even know about, giving legal opinions to the jurors during a — Are you familiar with our decision in Sims, Sims v. Rowland? Yes, Your Honor. And in that case, there was not a request for a hearing on the jury misconduct. And I think that makes that quite distinguishable from the case here. But we said, citing Remmer and Smith, that neither case mandates a hearing. Understood, Your Honor. It's actually distinguishable, though, I do believe, that because there wasn't a request for a hearing in Sims, one could not fault the trial court essentially for not holding one. And so your contention is that clearly established Supreme Court precedent says that if you request a hearing, that you're entitled to one. Well, I believe if it raises a risk, if the evidence that's before the court shows that there was a risk of influencing the verdict, then a hearing is required. And that's precisely what we have here. We don't have casual conversation in the hallway. We don't have some innocuous conversation. We have a consistent and persistent conversation between a juror and someone she said was a judge. And we have her relaying his legal advice to all of the other jurors. So we have the entire jury contaminated. We have an extra record legal advisor providing advice to the jury. That subverted the integrity of the entire process, because the trial judge who should have control of the proceedings and who should be controlling what evidence and what information is being given to the jury has completely lost control of that jury panel. And that's what happened in this case. There's more than just a risk of influencing the verdict. I mean, we have objective indications that it did, because we know that juror 10 had an anti-defense bias. We know she was in a hurry to get the trial over, and they deliberated only three hours and 35 minutes in a serious case where there was ample evidence of self-defense. Thank you, counsel. The time for your side has expired. Thank you. We'll hear from the state. Good morning, your honors. Deputy Attorney General Stephanie Miyoshi on behalf of the ward, and may it please the court. The district court's judgment in this case should be affirmed, because the California Court of Appeal did not contradict or unreasonably apply Supreme Court precedent in denying petitioners. The question I addressed to counsel is the California Court of Appeal standard that they operated from failed to demonstrate a strong possibility that prejudicial misconduct had occurred. Is that consistent with Maddox and Romer? I have four responses to that question, your honor. Any one of which I'll be persuaded by if it's valid. OK, then let me give it my best shot. My first argument would be California's law is in fact consistent with the US Supreme Court precedent, because like the US Supreme Court, California presumes that any misconduct is prejudicial, and it gives the government the burden of rebutting that presumption. Now, the standard that petitioner uses in her brief, which is reasonable possibility, is not a standard that's actually set forth by the US Supreme Court. It says private communications, the Sixth Amendment, according to Maddox, absolutely forbids private communications possibly prejudicial between jurors and third persons. That doesn't say anything about strong possibility, does it? No, it basically says private communications between jurors and third persons are forbidden, and it invalidates the verdict unless they are harmless. It doesn't set forth a standard to be used to determine whether the government has rebutted that presumption. So my first argument would be, because there really is no standard set forth by the US Supreme Court, the California Court of Appeal could not contradict or unreasonably apply US Supreme Court precedent. My second argument would be that California law is, in fact, consistent with federal law. Indeed, in People v. Loker, which I've cited to in my brief, the defendant there argued that California standard conflicted with the federal standard, and the Supreme Court of California denied that claim. And in People v. Thomas, which was also cited in my brief, the court initially sets forth the California standard for jury misconduct, and then goes on to conclude that the claim there should be denied because there was no reasonable likelihood that any juror was influenced by the misconduct. My third argument would be that I think under Harrington v. Richter and Johnson v. Williams, it's really the holding of the court that is looked at to determine whether the court contradicts or unreasonably applies Supreme Court precedent. Because in those cases, when a petitioner raises a federal claim in addition to a state law claim, and that claim is denied without explicitly dealing with the federal aspect of the claim, it is presumed that the court did deny the federal aspect of the claim. And then one looks to the holding to determine whether that holding contradicts or unreasonably applies Supreme Court precedent. And finally, even under de Novo review, I believe that the judgment should still be affirmed when we look to Supreme Court precedent. None of the cases are even similar to the case that we have here. In the Supreme Court cases, all of the communications are prejudicial communications dealing with the defendant. And here, all we have are basically communications involving procedural issues, as a California Court of Appeal reasonably found. So where, I appreciate your answer, where is it that the Court of Appeal, in this case, placed the burden on the state to show that it was harmless? All of their language is in terms of saying that Godoy didn't make the case. I would respectfully disagree, Your Honor. In the direct appeal opinion, the court- Well, that's why we have oral argument. Exactly. In the direct appeal opinion, the California Court of Appeal explicitly states that, well, it sets forth the standard. It says that the government bears the burden of proof. And then it goes on to say that Petitioner is arguing that the government did not, in fact, meet its burden of proof, and then goes on to subsequently deny the claim. So I think it's clear from the direct appeal opinion that the Court of Appeal did understand that the government always bore the burden of proof of showing that the misconduct was harmless. And in this particular case, found that the government had, in fact, met that burden. Anything further, counsel? No. Just to conclude that the district court's judgment should be affirmed in the case. Thank you very much, counsel. The case just argued will be submitted for decision. And we will hear argument next in Schumacher versus Wray.
judges: O'scannlain, Fisher, Bybee